# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PHOENIX INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., | ) ) ) ) ) |
| Intervenor-Plaintiff, | ) ) ) |
| v. | ) ) Case No. CIV-14-95-R |
| TAMMY WINTON, as Personal Representative of the ESTATE OF BRYANT MATTHEW WINTON, Deceased, et al., | ) ) ) ) ) ) |
| Defendants. | ) |

## ORDER

This matter comes before the Court on Phoenix Insurance Company's ("Phoenix") Motion for Summary Judgment [Doc. No. 50] and National Union Fire Insurance Company of Pittsburgh, PA.'s ("National") Motion for Summary Judgment [Doc. No. 71]. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine when a reasonable jury could find in favor of the nonmoving party on the issue." *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 712 (10th Cir. 2014). All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. *Id.* at 712-13.

## Background

This case arises out of a multi-vehicle accident that occurred on November 11, 2007. Compl. ¶ 16. One car involved in the collision, a Chrysler 300, was driven by Sofia Roberts, who died as a result of the accident. *Id.* The individuals in the other vehicle, or their estates, sued Roberts' estate in state court in Oklahoma for negligence, and in 2011, the judgments entered in favor of the plaintiffs totaled $14 million. *Id.* ¶¶ 20, 25-26, 28-29. According to the Complaint, Bob Moore Auto Group, Inc. ("Bob Moore") sold the Chrysler that Ms. Roberts was driving at the time of the accident to Marc Heitz on November 9, 2007, two days before the accident, but the paperwork documenting the transfer of ownership was not completed until November 12, one day after the accident. *Id.* ¶ 13. Plaintiffs allege that on November 9, Heitz sold the Chrysler to Sofia and Raymond Roberts. *Id.* ¶ 14. On November 12, Heitz gave Bob Moore a check for the purchase of the Chrysler, and on December 7, Heitz finalized the sale to Sofia and Raymond Roberts. *Id.* ¶¶ 17-18.

Phoenix, one of Bob Moore's insurance carriers, brought this action for a declaratory judgment against Raymond Roberts, as Personal Representative of the Estate of Sofia Roberts, and all plaintiffs in the state court suits. *Id.* ¶¶ 2-7, 8, 20. It seeks a declaratory judgment stating that Ms. Roberts was not an insured under the policy Phoenix issued to Bob Moore; at the time of the accident, the Chrysler was not a covered "auto" under the terms of the policy; and Phoenix is not a judgment debtor to Roberts' estate. *Id.* at 13. National, an additional insurer of Bob Moore, has intervened in this action as a plaintiff, and is also seeking a declaratory judgment that Roberts is not an

"insured" under its policy because Bob Moore did not own the Chrysler the time of the accident and Bob Moore did not give Ms. Roberts permission to use the car; the Chrysler is not a "covered auto" under its policy; and "National Union has no obligation to indemnify Roberts in connection with the underlying judgments, and National Union is not a judgment debtor to Roberts." Doc. No. 37, Ex. 1, at 8-10.

The main issue in this case is who owned the Chrysler at the time of the accident for the purpose of obtaining coverage under Plaintiffs' insurance policies. *See* Doc. No. 50, at 17; Doc. No. 71, at 6. Plaintiffs argue that the Chrysler was not owned by Bob Moore at the time of the accident, Ms. Roberts did not have Bob Moore's permission to drive it, and title passed to Ms. Roberts when the car was physically delivered to her. Doc. No. 50, at 19-30; Doc. No. 71, at 6. Defendants contend that sufficient evidence exists that Bob Moore did own the vehicle, or, alternatively, that Bob Moore and Marc Heitz were co-owners, that Ms. Roberts was a permissive driver of the vehicle at the time of the accident, and therefore, her estate is entitled to coverage under Plaintiffs' policies. Doc. No. 74, at 13; Doc. No. 75, at 16-25; Doc. No. 77, at 9-12; Doc. No. 86, at 13; Doc. No. 87, at 19-29; Doc. No. 88, at 18-26. Because the Court finds that Bob Moore did not own the Chrysler at the time of the accident, it does not address whether Ms. Roberts was a permissive driver of the vehicle.

## Analysis

The insured has the burden of showing that a loss is covered under the policy. *Pitman v. Blue Cross & Blue Shield of Oklahoma*, 217 F.3d 1291, 1298 (10th Cir. 2000). "Therefore, summary judgment in favor of the insurer is proper when the undisputed facts

show that the insured has failed to establish a covered claim under its insurance policy." *Boggs v. Great N. Ins. Co.*, 659 F. Supp. 2d 1199, 1204-05 (N.D. Okla. 2009) (citing *VBF, Inc. v. Chubb Grp. of Ins. Cos.*, 263 F.3d 1226 (10th Cir. 2001)). The Court must determine, then, whether Defendants have produced evidence sufficient to create a genuine dispute of fact concerning whether their losses are covered under Plaintiffs' policies.

Defendants contend that their losses are covered under the omnibus clause of Plaintiffs' policies. An omnibus clause "extends liability coverage to the named insured and other persons using the insured vehicle with permission." *O'Neill v. Long*, 54 P.3d 109, 112-13 (Okla. 2002) (citing *Hartline v. Hartline*, 39 P.3d 765, 771 n.22 (Okla. 2001)). It "protects third parties wrongfully injured by the use of the insured vehicle by persons other than the owner." *Id.* at 113. Under Oklahoma law, every owner's automobile liability insurance policy must include such a clause that "insures against liability not only the named insured, but also any other person using an insured vehicle with the express or implied permission of the named insured." *Ball v. Wilshire Ins. Co.*, 221 P.3d 717, 721 (Okla. 2009) (citation omitted).

Oklahoma's Compulsory Insurance Law requires omnibus coverage only under the *owner's* liability insurance. OKLA. STAT. ANN. tit. 47, § 7-601(A) ("West) ("Every *owner* of a motor vehicle registered in this state, other than a licensed used motor vehicle dealer, shall, at all times, maintain in force with respect to such vehicle security for the payment of loss resulting from the liability imposed by law for bodily injury, death and property damage sustained by any person arising out of the ownership, maintenance, operation or

use of the vehicle." (emphasis added)). Because Defendants have not demonstrated that they are entitled to coverage under Plaintiffs' omnibus clause if Bob Moore did *not* own the Chrysler at the time of the accident,[1] the Court must determine whether Bob Moore owned the Chrysler on November 11, 2007.

In Oklahoma, a person's insurable interest in property terminates upon transfer of ownership, and any liability coverage that depends on ownership terminates once title is transferred, unless the insurance carrier approves coverage for the transferee. *Braun v. Annesley*, 936 F.2d 1105, 1108 (10th Cir. 1991) (citing *Farmers Ins. Co. v. Thomas*, 743 P.2d 1080, 1082 (Okla. 1987)). Therefore, whether Ms. Roberts' estate is entitled to any coverage depends on who had title to the car at the time of the accident.

"A 'sale' consists in the passing of title from the seller to the buyer for a price." OKLA. STAT. ANN. tit. 12A, § 2-106(1) (West). Section 2-401 of the Oklahoma Commercial Code explains how title passes in a sale of goods. Plaintiffs point to language in § 2-401(2), which provides, "Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods." Doc. No. 50, at 21; Doc. No. 71, at 14. In response, Defendants cite the Oklahoma Vehicle License and Registration Act, adopted in 1985, for the proposition that the certificate of title is definitive proof of legal ownership of a vehicle. The provision of the Act to which Defendants refer provides that "[i]t is the

---

[1] To the contrary, Phoenix's policy explicitly provides that in order to be a permissive user, Bob Moore must own, hire, or borrow the vehicle it gave the driver permission to use. Doc. No. 50, Ex. 1, at 34. National also contends that "[t]o qualify as an insured under the National Union Policy, an individual must both be using a car that Bob Moore owns, and be using that car with Bob Moore's permission." Doc. No. 71, at 13.

intent of the Legislature that the owner or owners of every vehicle in this state shall possess a certificate of title as proof of ownership." OKLA. STAT. ANN. tit. 47, § 1103 (West).

But the Supreme Court of Oklahoma repeated in 2003 that "[m]otor vehicle certificates of title in Oklahoma are documents of convenience and are not necessarily controlling of ownership of an automobile." *Green v. Harris*, 70 P.3d 866, 871 (Okla. 2003) (citations omitted); *see also United States v. Stark*, 961 F.2d 221, 221 (10th Cir. 1992) (unpublished) ("However, the transfer of a certificate of title alone is not sufficient to constitute a sale under Oklahoma law. The certificate of title is not the same as legal title." (citation omitted)). It also cited *City National Bank & Trust Co. v. Finch*, 237 P.2d 869 (Okla. 1951) for the proposition that a "[c]ertificate of title is not a muniment of title which establishes ownership, but is merely intended to protect against theft and facilitate recovery and aid in enforcement of motor vehicle regulation." *Green*, 70 P.3d at 871 n. 11. Therefore, the mere fact that the certificate of title to the Chrysler was not transferred from Bob Moore to Marc Heitz until after the accident[2] is not determinative of ownership in this case. "The sale of [an] automobile [is] complete upon delivery of the car with the intent to sell." *Medico Leasing Co. v. Smith*, 457 P.2d 547, 551 (Okla. 1969) (citing § 2-401(2)).

Plaintiffs produced evidence that Bob Moore sold the Chrysler to Marc Heitz for $28, 617. Doc. No. 50, Exs. 3-4; Doc. No. 71, Exs. 1-3. They also produced evidence that Marc Heitz delivered the car to Ms. Roberts by November 9, 2007. Doc. No. 50, Exs. 6-7;

---

[2] Doc. No. 50, Ex. 4; Doc. No. 71, Ex. 2.

6

Doc. No. 71, Exs. 5-6. Although the documents evidencing the sale from Bob Moore to Marc Heitz are dated Monday, November 12, an affidavit from the General Manager of Bob Moore provides that, according to the ordinary course of business, he "can confirm … that once the Chrysler 300 was in the possession of the Marc Heitz representative, Marc Heitz was the owner of that vehicle." Doc. No. 50, Ex. 5, ¶ 7; Doc. No. 71, Ex. 4, ¶ 7. According to the manager, when an offer to buy or sell a vehicle is accepted, "the dealership seeking the trade will then take the offered trade vehicle to the dealership which owns the requested vehicle and paperwork is exchanged." Doc. No. 50, Ex. 5, ¶ 4; Doc. No. 71, Ex. 4, ¶ 4. But "transaction paperwork is not processed on most Fridays, Saturdays, or Sundays; any weekend transactions are generally processed on the following Monday or Tuesday." Doc. No. 50, Ex. 5, ¶ 6; Doc. No. 71, Ex. 4, ¶ 6. In this case, November 9, the day Bob Moore transferred the Chrysler to Marc Heitz, was a Friday.

Defendants argue that the manger's affidavit is insufficient to constitute evidence that Bob Moore sold the Chrysler to Marc Heitz on November 9, instead of November 12, because the manager admits to having no personal knowledge of this particular transfer. Doc. No. 77, at 5; Doc. No. 88, at 10-11; *see* Doc. No. 50, Ex. 5, ¶ 7; Doc. No. 71, Ex. 4, ¶ 7. But personal knowledge is not required to admit evidence of an organization's routine practice under Federal Rule of Evidence 406. *See* FED. R. EVID. 406 ("Evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice. The court may admit this evidence regardless of whether it is

corroborated or whether there was an eyewitness."). This evidence is sufficient to raise an inference that Bob Moore followed its standard practice when it delivered the Chrysler to Marc Heitz on November 9. *See Hancock v. Am. Tel. & Tel. Co., Inc.*, 701 F.3d 1248, 1261-64 (10th Cir. 2012) ("Because business organizations have a 'profit-driven need for regulatory,' evidence of their routine practice is 'particularly persuasive.'" (citations omitted)).

Defendants do not produce evidence to dispute the delivery of the car from Bob Moore to Marc Heitz on November 9, nor do they produce evidence that the parties had explicitly agreed that title would pass at a time other than when the car was delivered. *See* Doc. No. 64, at 8-9, ¶ 2; Doc. No. 76, at 9; Doc. No. 77, at 6-7; Doc. No. 78, at 6. Pursuant to § 2-401(2), the Court finds that title to the Chrysler passed from Bob Moore to Marc Heitz at the time Bob Moore delivered the vehicle to Marc Heitz on November 9. Because coverage under Plaintiffs' policies depends on Bob Moore owning the Chrysler, that coverage terminated once the vehicle was delivered to Marc Heitz on November 9. Therefore, Defendants are not entitled to coverage for their losses under the omnibus clause Plaintiffs' policies.

## Conclusion

In accordance with the foregoing, Phoenix Insurance Company's Motion for Summary Judgment [Doc. No. 50] and National Union Fire Insurance Company of Pittsburgh, PA.'s Motion for Summary Judgment [Doc. No. 71] are GRANTED. The Court concludes as a matter of law that Sofia Roberts was not an "insured" under the policies Plaintiffs issued to Bob Moore; the Chrysler was not a "covered auto" under the

8

terms of Plaintiffs' policies with Bob Moore; and Plaintiffs have no obligation to indemnify Ms. Roberts' estate in connection with the underlying state court judgments.

IT IS SO ORDERED this 27th day of February, 2015.

_David L. Russell_
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE